## WOOD *v.* BLANCKE.

1. COVENANTS—CONSTRUCTION.
   Restrictive covenants in deeds are construed strictly against grantors and those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property.

2. SAME—RESIDENTIAL NEIGHBORHOODS.

Covenants restricting the erection of any building except for dwelling house purposes are construed to apply to the use as well as to the character of the building and in strictly residential neighborhoods where compliance therewith has always been had, nullification of the restrictions is deemed a great injustice to the owners of property.

3. SAME—INJUNCTION—RESIDENTIAL RESTRICTIONS.

Courts protect property owners seeking to enjoin violation of restrictive covenants contained in their deeds where the plaintiffs have not themselves violated restrictions in the enjoyment of their homes and holdings.

4. SAME—RESIDENTIAL RESTRICTIONS—PUBLIC POLICY.

Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy.

5. PROPERTY—RIGHT OF PRIVACY FOR HOMES.

The right of privacy for homes is a valuable right.

6. COVENANTS.—RESIDENTIAL RESTRICTIONS—USUAL, ORDINARY AND INCIDENTAL USES.

The usual, ordinary and incidental use of property as a place of abode does not violate a covenant restricting such use to residence purposes only but an unusual and extraordinary use may constitute a violation.

7. SAME—RESIDENTIAL RESTRICTIONS—BREEDING OF RACING PIGEONS.

The maintenance and breeding of a flock of at least 40 or more racing pigeons is not the usual, ordinary or incidental use of property whose use is restricted to residence purposes only.

8. SAME—RESIDENTIAL RESTRICTIONS—MINOR, CASUAL, INFREQUENT OR UNOBTRUSIVE NONCONFORMING USES.

Property restricted to use for residence purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or the following of some professional pursuits so long as the latter use is in fact casual, infrequent or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance or discomfort to neighboring residents.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 7, 1943. (Docket No. 56, Calendar No. 42,245.) Decided February 23, 1943.

Bill by Logan T. Wood and others against Boudewyn and Augusta Blancke to restrain violation of restriction on use and occupancy of real estate. Decree for plaintiffs. Defendants appeal. Affirmed.

*Alexander P. Leete* and *Harry J. Merrick,* for plaintiffs.

*Howard L. Richards,* for defendants.

BUSHNELL, J. Plaintiffs Wood, and some 40 others who join with them, reside in the village of Lochmoor (now Grosse Pointe Woods), Wayne county, Michigan, and are the owners of various properties described as—

"part of private claims 156, 183 and 577, front and rear concessions, lying east of center of Mack avenue, village of Grosse Pointe Shores and township of Grosse Pointe, Wayne county, Michigan, according to the plat thereof recorded in the office of the register of deeds for Wayne county, Michigan, in liber 38 of plats, pages 89 and 90."

Defendants Boudewyn Blancke and Augusta Blancke, his wife, are the owners of lot 263 in this subdivision, having obtained title thereto by warranty deed from the Grosse Pointe Township Improvement Company, a Michigan corporation, on June 28, 1940. The conveyances by which plaintiffs and defendants hold title contain covenants reading as follows:

· " 'It is hereby expressly understood between the parties hereto that the following conditions and restrictions are of the essence of this agreement and the said parties of the second part purchase said premises upon the express understanding that these conditions and restrictions run with the land and

that said parties of the second part will comply with the same in every respect; these conditions and restrictions are as follows:  *  *  *

"'(h) It is a condition of this agreement that only one single residence shall be constructed on each of the lots on this subdivision and that the same shall be used for residence purposes only, excepting lots 110 to 124, both inclusive.  *  *  *

"'(j) No residence shall be constructed upon any of the lots in this subdivision at a cost of less than $10,000, excepting lots 110 to 124, both inclusive, excepting also lots 34, 190, 191, the cost of the residence for which shall not be less than $20,000. It is also specifically understood that the plans for residences to be built upon any of this property shall be first approved by the said party of the first part, or its assigns.'"

It is undisputed that the subdivision in question contains a fine grade of single residences costing not less than $10,000, and that there has been no breach of any of the building restrictions since the property was platted in 1917.

Plaintiff Alexander P. Leete, on November 8, 1940, wrote a letter to defendant Boudewyn Blancke, then residing at 5263 Maryland, Detroit, in which he stated that he and certain owners of properties in the subdivision had learned that defendant intended to rearrange the garage upon the lot he had purchased to include a loft for the housing and breeding of carrier pigeons. Defendant's attention was directed to the restrictive covenants, and he was informed that such use of the premises would be objectionable. It is charged that Blancke then called upon Leete and stated to him and several others that he intended to keep about 40 pigeons in the garage, but would not make any change in the existing building until he moved into the property

sometime in January, 1941, and that he would then move his flock of about 100 pigeons into the premises.

On January 4, 1941, plaintiffs filed a bill of complaint seeking an injunction restraining defendants from keeping, housing, or breeding pigeons upon their lot or any other lot in the subdivision. Upon the trial of the matter, it was conceded that the question of whether the keeping of racing pigeons was a nuisance was not at issue.

Defendant Boudewyn Blancke testified that he had 34 birds in his garage which were bred and kept for racing purposes only, and that he races them about 20 times a year. The testimony clearly shows that the defendant does not raise pigeons for commercial purposes, but only for sport. He contends that he is just as much entitled to keep pigeons on his property as his neighbors are to keep dogs or cats.

The trial judge held that the defendants had violated the building restrictions and entered a decree restraining them from keeping, housing, or breeding pigeons upon their premises.

Restrictive covenants in deeds are construed strictly against grantors and those claiming the right to enforce them, and all doubts are resolved in favor of the free use of property. *James* v. *Irvine,* 141 Mich. 376. Notwithstanding this rule of construction, covenants restricting the erection of any building except for dwelling house purposes have been held to apply to the use as well as to the character of the building; and in strictly residential neighborhoods, where there has always been compliance with the restrictive covenants in the deeds, nullification of the restrictions has been deemed a great injustice to the owners of property. *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625. It is the policy of the courts of this State to protect

property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings. *Swan* v. *Mitshkun,* 207 Mich. 70. The court said in *Johnstone* v. *Detroit, G. H. & M. R. Co.,* 245 Mich. 65, 74 (67 A. L. R. 373):

"Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate. This court has expressly recognized that the right of privacy for homes is a valuable right. *Signaigo* v. *Begun,* 234 Mich. 246."

Before defendant purchased the premises he discussed the possibility of objections with Mr. William M. Mertz, vice-president and secretary of the Grosse Pointe Township Improvement Company, the common grantor of plaintiffs and defendants. Although Mr. Mertz did not express any considered legal opinion on the subject and the exact number of pigeons the defendant intended to keep on the premises was not discussed, it appears that Blancke was informed that it was unlikely that any objection would be made because he kept only a reasonably few pigeons as pets.

Although Blancke is not operating a pigeon loft for commercial purposes, he is doing more than keeping a few pet pigeons. He breeds, trains and races a flock of pigeons of at least 40 in number. If this is not a violation of the restriction of the use of the premises for residential purposes, neither would be the maintenance of a flock of several hundred or more.

No clear and definite line can be drawn as to residential use of premises. It is a safe rule that the usual, ordinary and incidental use of property as a place of abode does not violate a covenant restrict-

ing such use to "residence purposes only," but that an unusual and extraordinary use may constitute a violation. Each case must be determined on its own facts, and it cannot be said that the maintenance and breeding of a flock of racing pigeons is the usual, ordinary or incidental use of one's property for "residence purposes only."

As was said in *Moore* v. *Stevens,* 90 Fla. 879, 887 (106 South. 901, 43 A. L. R. 1127):

"Instances are not lacking in which other courts have held or intimated that property restricted to use for residence purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or the following of some professional pursuits so long as the latter use is in fact casual, infrequent or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents. This view, however, further requires such additional use to be so reasonably incidental to the prescribed use and such a nominal or inconsequential breach of the covenants as to be in substantial harmony with the purpose of the parties in the making of the covenants, and without material injury to the neighborhood."

It is apparent that the effectiveness of the restrictions will be destroyed if defendants and others are permitted to house, raise and breed racing pigeons upon their premises.

The decree is affirmed, with costs to appellees.

Boyles, C. J., and Chandler, North, Starr, Wiest, Butzel, and Sharpe, JJ., concurred.