[Civ. No. 26108. First Dist., Div. Four. Jan. 27, 1970.]

FRED BIAGINI et al., Plaintiffs and Respondents, v.
KENNETH C. HYDE et al., Defendants and Appellants.

**COUNSEL**

F. James Miller for Defendants and Appellants.

Trepel, Gingerich & Hoss and Anthony J. Trepel for Plaintiffs and Respondents.

## OPINION

**CHRISTIAN, J.**—Kenneth and Myrtle Hyde appeal from a judgment enjoining Mrs. Hyde's part-time operation of a beauty parlor in her home as a violation of a restrictive covenant upon their property.

Before appellants purchased the tract home in question, the developers of the subdivision had recorded a declaration of restrictions upon all the property in the subdivision. The restriction at issue in this appeal reads: "A-1. *Land Use and Building Type.* No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in heighth [*sic*] and a private garage for not more than two cars."

Mrs. Hyde is licensed as a cosmetologist; prior to purchasing her home she discussed with the subdivider her desire to provide limited beautician services in her residence. She was informed that ". . . if the City of Sunnyvale said this was a legal use in the City, we felt there would be no objections to it because we had no objections to it. If it was legal within the City, it was legal as far as we were concerned." We do not hold that this expression was binding on other owners, who might otherwise be entitled to enforce equitably the terms of the recorded restrictions. (See 14 Cal.Jur.2d, Covenants, § 107.) But this evidence was received without objection pointing out its possible incompetency. Appellants also received notice that other owners in the subdivision objected to Mrs. Hyde's intended use as a violation of the covenant and that should she proceed with her plans they would bring suit against her. She nevertheless commenced the activity complained of. The present litigation followed.

Mrs. Hyde did not advertise in any way, no external evidence of her activities could be seen, and no inconvenience to the neighbors was caused. But she admitted that she saw as many as six customers a day; she was sufficiently active in the cosmetology business to produce a revenue of about $5,000 a year. The court found that the described activities constituted a "commercial use" detrimental to respondents, carried on in violation of the restriction quoted above; judgment was entered against appellants enjoining Mrs. Hyde's activities.

Appellants do not dispute the proposition that Mrs. Hyde's activities could have been prevented by a restriction drawn for that purpose. They point out, however, that the restriction actually recorded is general in terms and that, although no California authority is found, courts of some other jurisdictions have held "that an incidental use of a dwelling for business or professional purposes does not necessarily constitute a violation of a covenant restricting the use of the dwelling to residential purposes, but

that the question of violation in such a case depends upon the extent or manner in which the incidental use in question is conducted." (21 A.L.R.3d 641, 645.) Despite the existence of a restrictive covenant limiting the use of property to residential purposes, incidental use of the property for commercial purposes has been allowed. These foreign cases have developed no precise test of incidental use, but such factors have been considered as to whether the use is casual or infrequent, results in no appreciable damage to other owners in the area, creates no inconvenience or annoyance to neighboring residents, and is in substantial harmony with the purposes of the parties in establishing the restriction. (See *id.* at p. 646, citing *Swineford* v. *Nichols* (1961) 87 Ohio L.Abs. 493 [16 Ohio Ops.2d 432, 177 N.E.2d 304], and *Epstein* v. *Rabinowitz* (1952) 83 Pa. D. & C. 197.) A review of these cases shows, however, no high degree of predictability of result; the concept of "incidental use," even as elaborated by such cases as *Swineford, supra,* has not proved to be a reliable guide to the construction of recorded restrictions.

■ Restrictive covenants will be construed strictly against persons seeking to enforce them, and in favor of the unencumbered use of the property. (See *Wing* v. *Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]; *Smith* v. *North* (1966) 244 Cal.App.2d 245, 248 [53 Cal.Rptr. 94].) It is well to recall, nevertheless, that one of the court's functions was to construe the restriction for the purpose of determining, from its language, the intent of the parties. We are not persuaded that to allow a general exemption for vaguely defined "incidental" commercial uses would assist in the construction of such covenants. ■ We conclude that the trial court was correct in determining that Mrs. Hyde's activities violated the requirement that "no lot shall be used except for residential purposes."

It does not follow that, under this analysis, the court was compelled to grant injunctive relief to respondents as an automatic consequence of a showing of a merely trivial or inconsequential violation of the restriction. ■ It is true that proof of substantial damages from violation of a covenant is not an essential foundation to the court's exercise of discretion in granting an injunction (*Morgan* v. *Veach* (1943) 59 Cal.App.2d 682, 690 [139 P.2d 976]; 14 Cal.Jur.2d, Covenants, § 128). But in the absence of a showing of material interference with interests of the convenantee, the court of equity may in the exercise of its discretion withhold injunctive relief. (*Frost* v. *City of Los Angeles* (1919) 181 Cal. 22, 31 [183 P. 342, 6 A.L.R. 468]; 27 Cal.Jur.2d, Injunctions, § 43.) ■ Here the trial court did not exercise its discretion in such manner, apparently because it found that the activities of Mrs. Hyde constituted "a detriment and injury to the plaintiffs." We cannot say that the finding just quoted is unsupported in

the evidence, where Mrs. Hyde's own testimony was that her cosmetology business involved as many as six visits per day and produced annual revenue of about $5,000. That evidence reasonably supports an inference that the use complained of was detrimental to respondents in appreciably detracting from the residential character of the neighborhood.

The judgment is affirmed. The purported appeal from miscellaneous orders is dismissed.

Devine, P. J., and Rattigan, J., concurred.