# STATE OF MICHIGAN

# COURT OF APPEALS

JAN VANSTEENHOUSE,

   Plaintiff/Cross Defendant-Appellee,

v

WYNNE WINSLOW f/k/a WYNNE DOWNING,

   Defendant/Cross Plaintiff-
   Appellant.

and

TOWNSHIP OF HOPE,

   Defendant.

UNPUBLISHED
June 28, 2016

No. 326224
Midland Circuit Court
LC No. 12-008936-CH

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's judgment in favor of plaintiff on her claim of acquiescence and her claim that defendant Wynne Winslow (defendant) violated deed restrictions. The trial court also ruled in plaintiff's favor on defendant's counterclaims for nuisance, harassment, and trespass. We affirm.

## I. FACTS

The parties dispute the location of the boundary line between lots 66 and 67 of the Lagoon Beach Subdivision. In 2001, defendant purchased lots 65, 66, and 67, and she lived in a house located on lots 65 and 66. Lot 67 is east of, and adjacent to, lot 66. In 2005, defendant sold lots 65 and 66 to plaintiff but retained lot 67 for herself.

Before closing on the sale, defendant walked the lot with plaintiff, showing her the boundary lines, including the now relevant boundary line between lots 66 and 67. Plaintiff testified that defendant pointed out a "candy-cane" shaped rod in the ground near the lake. Plaintiff explained that defendant indicated that this rod, along with another marker near the road, marked the property line between lots 66 and 67. According to plaintiff, the candy-cane shaped rod was located just east of a large tree. Defendant agreed that she showed plaintiff the boundary line between the two properties, but she further contends that she identified a marker

-1-

that is west of the large tree. This lawsuit was incited by a fence plaintiff built along what she believed to be the boundary line between the parties' properties. Years earlier, defendant had objected to the presence of two trees plaintiff had planted in the disputed area.

Following a bench trial, the court found that "both parties treated the boundary line created by the 'candy cane' metal shaped rod and the stake at the end of the road as the correct boundary line which is evidenced by their actions." Noting the "subsequent disputes over the correct boundary line" and surveys that had been completed in 2008 and 2012, the court concluded that "there was not a subsequent agreement or acceptance of a new boundary line." The court found in favor of plaintiff on her claim of acquiescence.

## II. ANALYSIS

### A. ACQUIESCENCE AND TRESPASS

Defendant argues that the trial court erred in ruling that plaintiff is entitled to the disputed land by acquiescence. A trial court's decision to quiet title is an equitable decision which is reviewed de novo. *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996). The factual findings underlying this decision are reviewed for clear error. *Id.*

There are three theories of acquiescence recognized in Michigan: "acquiescence for the statutory period, acquiescence following a dispute and agreement, and acquiescence arising from the intention to deed to a marked boundary." *Waisanen v Superior Twp*, 305 Mich App 719, 732-733; 854 NW2d 213 (2014). Both parties agree that this case involves the third theory— acquiescence arising from the intention to deed to a marked boundary. Acquiescence to a marked boundary occurs when a grantor references a marker and expresses an intent to convey to that marker. *Daley v Gruber*, 361 Mich 358, 363; 104 NW2d 807 (1960); *Maes v Olmstead*, 247 Mich 180, 184; 225 NW 583 (1929). When the parties designate a boundary on the ground that is different from the boundary listed in the deed, the designated boundary, if it is a "settled boundary," will not be disturbed. *Daley*, 361 Mich at 362.

The trial court was faced with contradicting testimony from plaintiff and defendant. Plaintiff claimed that defendant referred to the candy-cane rod on the east side of the tree when identifying the boundary line, while defendant claimed she referred to a different spot on the west side of the tree. The trial court credited plaintiff's testimony and found that the parties met in 2005 and fixed the boundary line at the candy-cane rod. Witness credibility is for the trier of fact to resolve. *Drew v Cass Co*, 299 Mich App 495, 501-501, n 1; 830 NW2d 832 (2013). This Court will not disturb the trial court's credibility determinations on appeal in the absence of exceptional circumstances. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Both parties' actions after plaintiff purchased the property indicated that this was a "settled boundary." For example, plaintiff installed erosion stones along the waterline that extended to the settled boundary line, and she built a deck on the property conforming to the township setback requirements. Also, there was uncontroverted testimony indicating that defendant placed a small fence along what plaintiff claims was the settled boundary line.

Accordingly, the settled boundary line became the true boundary line by acquiescence. *Daley*, 361 Mich at 363; *Maes*, 247 Mich at 184. And given that defendant's counterclaim of

trespass is predicated on the premise that the parties did not acquiesce to the boundary line advanced by plaintiff, the court did not err in dismissing defendant's trespass claim.

## B. DEED RESTRICTIONS

Defendant also argues that the trial court erred by finding she violated her deed restrictions. "The interpretation of restrictive covenants is a question of law that this Court reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008). The goal is to determine the intent of the parties, and unambiguous restrictions must be enforced as written. *Id.*

### 1. RESIDENTIAL PURPOSES

The warranty deed applicable to defendant's property states, "All lots sold within said Subdivision are to be used for residential purposes only . . . ." Later in the same paragraph, the deed provides that "[a]ll buildings shall be of a permanent nature . . . ." The restrictions do not make any mention of campers, recreational vehicles, or trailers.

In *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007), the Court said the phrase "strictly residential purposes only" in the deed in that case meant the land may only be used for "homes where people reside." Here, defendant does not use the lot as the location of her home. She uses the property primarily for recreational activities, including camping. Parking a camper on a lot for four months and using it for periodic camping activities is not consistent with the "usual, ordinary and incidental use of property as a place of abode . . . ." *Wood v Blancke*, 304 Mich 283, 288-289; 8 NW2d 67 (1943). Thus, the trial court was correct in determining defendant violated this deed restriction.

### 2. DEED RESTRICTION REQUIRING ALL BUILDINGS TO BE PERMANENT

The trial court erred, however, in determining that defendant's camper violated the deed restriction that "all buildings be of a permanent nature." This Court gives a term not defined by a deed restriction "its commonly used meaning." *Bloomfield Estates*, 479 Mich at 215. This Court has defined a "building" as a " 'relatively permanent, essentially boxlike construction having a roof and used for any of a wide variety of activities, as living, entertaining, or manufacturing,' " and a " 'structure designed for habitation, shelter, storage, trade, manufacturing, religion, business, education and the like. A structure or edifice enclosing a space within its walls, and usually, but not necessarily covered with a roof.' " *Ali v City of Detroit*, 218 Mich App 581, 584-585; 554 NW2d 384 (1996), quoting *The Random House College Dictionary: Revised Edition* (1984) and *Black's Law Dictionary* (5th ed). Accord *Merriam-Webster's Collegiate Dictionary* (11th ed), p 162 (defining "building" to be "a usu[ally] roofed and walled structure built for permanent use (as for a dwelling)").

Defendant's camper is a motor vehicle registered with the Secretary of State. It may have a geometric design much like a box, but it is not designed for permanent use. A camper is not a structure; it is not an edifice. Simply put, defendant's camper use cannot violate the restriction that all buildings be permanent because it is a vehicle, not a building.

But the trial court's finding that the camper violated the permanent-building restriction was not essential to its holding and ultimate resolution as we discussed above. In fact, this finding was articulated in one sentence after the court had explained at length why the camper was not a residence and thus violated the first restriction at issue. And the trial court also found that defendant otherwise violated the permanent-building restriction by using a portable outhouse, which she does not contest on appeal.

We affirm.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ /Mark T. Boonstra